SCOTT DIAZ,                              :
   Petitioner,                        :
                                  :
VS.                                     :     No. 3:94CR00026 (AVC)
                                  :     No. 3:97CV00719 (AVC)
UNITED STATES OF AMERICA,                :
   Respondent.                       :
                                  :

## RULING ON THE PETITIONER'S RENEWED MOTION
## FOR WRIT OF HABEAS CORPUS AND RENEWED MOTION FOR RECONSIDERATION

This is a motion brought pursuant to 28 U.S.C. § 2255
challenging the constitutionality of a sentence of 210 months
custody imposed on the petitioner after the court determined that
he met the criteria for a sentencing enhancement under the Armed
Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). The petitioner
seeks to vacate that sentence and have a new sentencing hearing.

The issue presented is whether the petitioner's trial
attorney, Michael Graham, rendered constitutionally ineffective
assistance of counsel while representing the petitioner at his
August 29, 1994 sentencing hearing. For the reasons stated
herein, the court concludes that the petitioner did not receive
ineffective assistance of counsel that resulted in prejudice.
The motion is therefore DENIED.

## FACTS

A.   Background

Examination of the record and letter briefs submitted in
this matter discloses the following undisputed material facts.
On March 8, 1994, the petitioner, Scott Diaz, was arraigned on a
one count indictment charging him with knowingly possessing a

firearm as a convicted felon, in violation of 18 U.S.C. §
922(g)(1). At the arraignment, the government furnished notice
to the petitioner that, because he had three prior convictions
for violent felonies and/or serious drug offenses, he was subject
a sentencing enhancement under the Armed Career Criminal Act
("ACCA"), 18 U.S.C. § 924(e).[1] The three prior convictions were
(1) robbery in the second degree on November 22, 1985; (2)
assault in the first degree on November 22, 1985; and (3)
possession of narcotics with the intent to distribute on November
22, 1985.

Prior to trial, the petitioner's counsel, attorney Elton
Williams, filed a motion to preclude the use of the prior three
convictions in any ACCA enhancement, arguing that the convictions
were imposed without advice to the petitioner of his
constitutional right to a jury trial and to confront and cross
examine witnesses. On May 17, 1994, the court denied the motion
without prejudice to its refiling prior to sentencing. Attorney
Williams also requested the court files from the Connecticut
records center in Enfield for the proffered three prior
convictions, and received a response that the record for the
robbery conviction could not be located.

On June 7, 1994, the parties appeared for jury selection.
After jury selection, attorney Michael Graham replaced attorney
Williams as the petitioner's trial counsel. On June 10, 1994,

_____

[1] The application of the ACCA is incorporated into the U.S.
Sentencing Guidelines at § 4B1.4.

2

the parties appeared for jury trial.  Later that same day, the jury convicted the petitioner on the one count violation of 18 U.S.C. § 922(g)(1).

On September 1, 1994, the court held a sentencing hearing and, relying on three proffered prior felony convictions, determined that the petitioner met the statutory requirements for a sentence enhancement under the ACCA.[2]  In addition to the three proffered prior convictions, the presentence report recited "several other convictions in his criminal record that would qualify him for this [ACCA] provision," and that the petitioner had been convicted in July of 1989 of criminal possession of a weapon at a correctional institution in violation of Conn. Gen. Stat. § 53a-174a.[3]  This conviction stemmed from a knife fight the petitioner had with another inmate at the Somers Correctional Institution on May 4, 1989.

The petitioner did not challenge the ACCA enhancement because attorney Graham advised him that the prior convictions would have to be challenged in state court, after which the petitioner could return to federal court to petition for a new and more lenient sentence.  The court thereafter sentenced the

---

[2]  The court determined that an offense level of 33 applied, pursuant to U.S.S.G. § 4B1.4.

[3] Conn. Gen. Stat. § 53a-17a provides, in relevant part, that "a person is guilty of possession of a weapon or dangerous instrument in a correctional institution when, being an inmate of such institution, he knowingly makes, conveys from place to place or has in his possession or under his control any firearm, weapon, dangerous instrument, explosive, or any other substance or thing designed to kill, injure or disable."

petitioner to 210 months custody followed by three years of supervised release.

After sentencing, the petitioner obtained new counsel and appealed his conviction to the United States Court of Appeals for the Second Circuit but did not challenge his sentence. On January 10, 1996, the Second Circuit affirmed the judgment of conviction. The petitioner thereafter filed a petition seeking a writ of <u>certiorari</u> from the United States Supreme Court. On May 13, 1996, the Supreme Court denied that petition.

On April 14, 1997, the petitioner filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. He argued that he received ineffective assistance of counsel at sentencing because attorney Graham failed to challenge an alleged error in his criminal history, making him subject to a sentencing enhancement under the ACCA. Specifically, the petitioner argued that although the court found that he had three prior convictions for violent felonies and/or serious drug offenses, one of the convictions, i.e., the conviction for robbery in the second degree, could not be counted as he was not represented by counsel in that matter. The petitioner further argued that new extrinsic evidence obtained from the Enfield Records Center proved that he was not represented by counsel at the time of his guilty plea to the robbery charge. As such, the petitioner argued, he had been erroneously sentenced pursuant to a statute, the ACCA, to which he was not lawfully subject.

On July 28, 1997, the government responded to the motion,

4

arguing that the claim was without merit because it contradicted statements the petitioner made to the probation officer in which he admitted that he was represented by counsel and that, even if the robbery conviction was invalid, the petitioner had several other prior convictions requiring the ACCA enhancement. Further, the government maintained that the alleged new evidence was not new at all, in that the government had furnished it to the petitioner's trial attorney during pretrial discovery.

On August 13, 1998, the court issued a memorandum of decision denying the motion and concluding that, for the same reasons advanced by the government above, the petitioner was not entitled to any relief because he could not show any prejudice.

On June 22, 2000, the petitioner applied for and received a certificate of appealability from the Second Circuit. While his appeal remained pending, the government agreed with him that a need existed for an evidentiary hearing to resolve contradictory evidence, and hence filed a motion seeking a voluntary remand. On April 3, 2001, the Second Circuit granted the government's motion, vacated the court's order denying the § 2255 motion, and remanded for resolution of the following issues:

> (1) whether [the petitioner's] claim that counsel rendered ineffective assistance by failing to investigate or contest one of his prior convictions used to enhance his sentence under 18 U.S.C. § 924 (e) on the ground that he was not represented by counsel in that conviction qualifies as a 'record based' claim within the meaning of Billy-Eko v. United States, 8 F.3d 111 (2d Cir. 1993), where the state court documents supporting the claim were not

> obtained until [the petitioner's] direct
> appeal was completed; and, if so, (2)
> whether [the petitioner] made a
> sufficient showing of cause and prejudice
> to allow his claim to receive habeas
> review.

On remand, the petitioner submitted several additional motions but did not seek any additional discovery and he did not furnish the court with any new information concerning his claim. On October 11, 2001, after considering the parties' submissions on remand, the court once again denied the petition. Thereafter, the petitioner appealed that decision to the Second Circuit.

The Second Circuit dismissed the appeal without prejudice to it being reinstated upon "the entry of an order by the district judge grant[ing] or denying a certificate of appealability." The petitioner thereafter filed a motion for a certificate of appealability with this court. On January 13, 2003, the court granted that motion in part, concluding that the petitioner may pursue on appeal the issue of: (1) whether he received "record based" ineffective assistance of counsel within the meaning of Billy-Eko v. United States, 8 F.3d 111 (2d Cir. 1993) and, if so; (2) whether he demonstrated cause and prejudice sufficient to allow his claim to receive habeas review.

With the matter now with the court of appeals, the government once again filed a motion seeking a remand. The government maintained that, in light of Massaro v. United States, 538 U.S. 500 (2003), the court of appeals should vacate the court's order of October 11, 2003, denying relief on the

6

ineffective assistance of counsel claim to the extent it
concerned attorney Graham's failure to object to the court's use
of an uncounseled robbery 2 conviction to enhance the
petitioner's sentence under the ACCA.  The Second Circuit agreed
and, on June 7, 2004, the court of appeals vacated this court's
order of October 11, 2003, and remanded the matter to this court
for an evidentiary hearing on the claim.  Specifically, the
Second Circuit stated:

> The Government moves to vacate the district court's
> order denying appellant's 28 U.S.C. § 2255 motion . . .
> .  Upon due consideration, . . . the motion is GRANTED.
> The portion of the district court's order denying §
> 2255 relief with regard to appellant's ineffective
> assistance of counsel claim based on his counsel's
> failure to object to the district court's use of his
> uncounseled robbery conviction to enhance his sentence
> under the Armed Career Criminal Act, 18 U.S.C. §
> 924(e), is VACATED and the action is REMANDED to allow
> for an evidentiary hearing and new decision on that
> claim.

On August 31, 2004, the court held the evidentiary hearing.

B.   First Evidentiary Hearing

On August 31, 2004, at the evidentiary hearing, the
petitioner testified that he told each of his attorneys,
including attorney Graham, that he was not represented by counsel
in connection with the robbery conviction.  He testified how he
appeared in court on the robbery charge on several occasions to
discuss the case with the prosecutor, and that, in exchange for
an Alford plea, he received a sentence of a fine and probation.
At the hearing, the petitioner introduced into evidence a
superior court docket sheet that reflected the absence of an

attorney during the robbery proceedings.

In response, the government appeared to abandon the
proposition that the robbery conviction constituted a valid
predicate for the ACCA enhancement.  Instead, the government
asserted that even if the court improperly relied on an
uncounseled robbery conviction, the petitioner suffered no
prejudice because he had been convicted of another crime which
could be substituted for that conviction, namely, the crime of
criminal possession of a weapon at a correctional institution in
violation of Conn. Gen. Stat. § 53a-174a.  The charges stemmed
from an incident at Somers Correctional Institution where the
petitioner was involved in a knife fight with another inmate.

The petitioner did not dispute either that he had
participated in a knife fight or that he was disciplined by the
department of corrections for his conduct.  The petitioner did,
however, challenge the validity of this conviction by testifying
that he could not remember being charged criminally with
possessing a weapon or appearing in court to face charges.

In response, the government offered a certified copy of a
judgment <u>mittimus</u> that stated that, on July 11, 1989, the
petitioner was convicted of the crime of possessing a weapon in a
correctional facility in violation of Conn. Gen. Stat. § 53a-174a
in the Connecticut superior court at Tolland and that he received
a sentence of one year for the offense.  The government also
offered the testimony of Susan Shepard, a records specialist with
the Connecticut department of corrections.  Shepard testified

that a judgment _mittimus_ is an official record of the conviction
that is created by the court at the time of sentencing.  Shepard
also testified that, according to records maintained in the
department of corrections master file, the petitioner's 1989
conviction stemmed from a knife fight that occurred on May 4,
1989, while he was incarcerated at Somers.

The petitioner, however, credibly challenged the validity of
that conviction.  In particular, in support of his claim that
he did not recall being brought to court to face the charge, the
petitioner pointed out that: (1) the judgment _mittimus_ does not
contain an acknowledgment that the petitioner was ever actually
delivered to the court, though the entire bottom section of the
judgment document demands such information, and other judgments
_mittimus_ moved into evidence reflect a properly executed
acknowledgment; (2) that Somers Correctional Institute did not
actually receive the judgment until July 12, 1989, that is, one
full day after his alleged appearance in court, though by custom
the judgment travels with the convict and is presented to the
department of corrections upon the inmate's return to the
facility, usually the very same day of the conviction.  Further,
Shepard testified that inmates have been sentenced _in absentia_,
and in this case, no docket sheet was produced to better
illuminate that proceeding or prove that the petitioner had been
represented by counsel.

On September 2, 2004, after the evidentiary hearing had been
held, the petitioner submitted a letter to the court, stating the

9

following arguments for granting his § 2255 motion: 1) the
government failed to meet its burden in establishing that [the
petitioner] had three prior serious drug or violent felony
convictions that were not constitutionally infirm, 2) criminal
possession of a weapon or dangerous instrument in a correctional
institution is not a violent felony, 3) the ACCA is facially
unconstitutional or, in the alternative, the court may not make a
factual finding that Connecticut's possession of a weapon or
dangerous instrument in a correctional institution statute
constitutes a violent felony offense, 4) the government should be
estopped from using the possession of a weapon or dangerous
instrument in a correctional institution conviction, and 5) even
if the petitioner was an ACCA armed career criminal, he was still
prejudiced by his attorney's failure to alert the court to errors
in the presentence report, which may have resulted in the
imposition of a sentence in excess of the mandatory minimum.  On
October 19, 2004, the court ordered the clerk to docket the
letter as a renewed petition pursuant to 28 U.S.C. § 2255.

C.   The Court's Ruling and Reconsideration

On July 5, 2005, the court ruled on the petitioner's § 2255
motion.  The court found that the petitioner had demonstrated by
a preponderance of the evidence that he was convicted and
sentenced in absentia of the crime of criminal possession of a
weapon at a correctional institution in violation of Conn. Gen.
Stat. § 53a-174a, and that he was not represented by counsel in
that matter.  The court concluded that the petitioner had proven

both cause, i.e., that he had received ineffective assistance of
counsel with respect to his sentencing, and prejudice, i.e., that
but for the ineffective assistance of counsel, the result of the
sentencing proceeding would have been different, since the
conviction for criminal possession of a weapon at a correctional
facility, "like the robbery conviction, may not serve as a
predicate for imposing an ACCA enhancement."  The court,
therefore, granted the petitioner's § 2255 motion, vacated the
ACCA enhancement, and ordered the government to show cause why
the petitioner should not be immediately released from custody
pending a hearing to correct the sentence.

On July 7, 2005, the government moved for reconsideration of
the court's July 5, 2005, order, arguing that "recently
discovered information" demonstrated that the petitioner was
represented by counsel in connection with the weapons conviction
and, accordingly, that conviction properly served as a substitute
for the uncounseled robbery conviction for authorizing the ACCA
enhancement.  Specifically, the government attached what it
claimed to be a Connecticut superior court docket sheet to its
motion, which indicated that the petitioner had been represented
by attorney "V.J. Giedraitis" at the time he tendered his guilty
plea and at the sentencing for the offense of possession of a
weapon or dangerous instrument in a correctional institution.
The government also furnished the court with an affidavit from
the judge who presided at the 1989 case, Hon. Michael A. Mack, in
which Judge Mack attests that the petitioner was represented by

"Vincent Giedraitis" in the matter and that to the best of his recollection, he did not accept the petitioner's guilty plea <u>in absentia</u>.

In opposing the government's motion, the petitioner argued that because the docket sheet and the judge's testimony were readily available to the government at the time of the August 2004 hearing, the government was not entitled to reconsideration of the order because it could not show that, despite due diligence, it could not have discovered this evidence at the time of the hearing. In reply, the government maintained that, as it had "submitted evidence which conclusively demonstrate[s] that the [c]ourt misinterpreted the import of [the evidence during the August 31, 2004 evidentiary hearing], . . . it would be clear error for the [c]ourt's finding . . . to stand as demonstrated by the docket sheet and [the judge's] affidavit."

On July 27, 2005, the court ruled on the government's motion for reconsideration, granting the motion.[4] The court stated:

---

[4] The court noted that:
Reconsideration of a previous ruling is appropriate where "there has been an intervening change in controlling law, there is new evidence, or a need is shown to correct a clear error of law or to prevent manifest injustice. <u>United States v. Sanchez</u>, 35 F.3d 673, 677 (2d Cir. 1994). Where reconsideration of a previous ruling would require a court to reopen an evidentiary hearing, the moving party is generally required to demonstrate that the evidence was unknown and could not through due diligence reasonably have been discovered at the time of the original hearing. <u>United States v. Nezaj</u>, 668 F. Supp. 330, 332 (S.D.N.Y. 1987). If the moving party is unable to show due diligence, a court may nevertheless reopen that proceeding if the proffered evidence "indicate[s] that no constitutional violation occurred, [as] society's interest in admitting all relevant

> Although the government fails to justify its failure to present this evidence at the August 31, 2004 hearing, the court will not require a justification – as exceptional circumstances are presented here, that is, evidence which is not offered simply for impeachment and which, standing alone, appears like a club to defeat any claim that the petitioner has been constitutionally aggrieved. Accordingly, the court will authorize a reopening of the record in this matter.

The court noted that while the docket sheet appeared to cast significant doubt on the petitioner's claims, it had not been properly received into the record. Accordingly, the court vacated its prior ruling on the petitioner's motion, and ordered the clerk to substitute an order "that the petitioner's renewed motion for writ of habeas corpus is DENIED . . . without prejudice pending a new evidentiary hearing."

On August 1, 2005, the petitioner appealed the court's July 27, 2005, order to the court of appeals. On August 2, 2005, the petitioner submitted a letter to this court requesting reconsideration of its July 27, 2005, order, which the court ordered docketed as a petitioner's motion for reconsideration (document no. 120). On August 12, 2005, the court denied the petitioner's motion for reconsideration of the court's July 27,

---

evidence militates strongly in favor of permitting reconsideration." United States v. Regilio, 669 F.2d 1169, 1177 (7th Cir. 1981). See also United States v. Bayless, 201 F.3d 116, 131 (2d Cir. 2000)(declining to adopt a bright line rule requiring the moving party to justify a failure to present all relevant evidence at the time of the original hearing). A judgment may be reopened only upon [a] showing of exceptional circumstances, Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986), and evidence which is merely cumulative or impeaching does not ordinarily constitute the basis for reopening a hearing. United States v. Oates, 445 F. Supp. 351, 353 (E.D.N.Y. 1978).

2005, order because the petitioner's appeal of the order to the
Second Circuit had "divested the court of jurisdiction to
consider this motion or to conduct further proceedings in
connection with the July 27, 2005 ruling."  Therefore, the court
denied the petitioner's motion for reconsideration without
prejudice to its renewal, if desired, following the conclusion of
the appeal.

On June 23, 2006, the Second Circuit ordered this court to
clarify whether its July 27, 2005, ruling was intended to deny
the petitioner's § 2255 motion, such that it was a "final" and
thus appealable order, and, if not, to amend the July 27, 2005
order to reflect that the § 2255 motion was not denied, but
rather deferred pending the evidentiary hearing.  On June 26,
2006, the court amended its July 25, 2005, order to reflect that
the petitioner's § 2255 motion was not denied, but deferred
pending an evidentiary hearing.

On October 25, 2007, the court held that evidentiary
hearing.

D.   Second Evidentiary Hearing

On October 25, 2007, at the second evidentiary hearing, the
government presented evidence in support of its argument that the
petitioner had been counseled in connection with the 1989
conviction and sentencing for possession of a weapon or dangerous
instrument in a correctional institution, and that he had not
been convicted in absentia.  The government entered into
evidence, both as a business record as well as a certified public

14

record, a document referred to as a "clerk's worksheet" or
"docket sheet" that consists of a record of court events on July
11, 1989, in connection with the weapons conviction.  Roy Smith,
the clerk of the Rockville superior court, testified that the
document indicates that the petitioner was represented by counsel
and present in the courtroom on July 11, 1989, when he pleaded
guilty and was sentenced in connection with the charged violation
of Conn. Gen. Stat. § 53a-174a.  The presiding judge in that
case, Judge Michael Mack, testified that the document was typed
by the clerk's office prior to the proceedings and that the
handwritten notations on the document, indicating events in the
courtroom, were in the handwriting of his courtroom clerk at the
time.  Judge Mack also testified that the only time a defendant
would have been tried in absentia was "if it were a reduction to
nothing, either a nolle . . . or a dismissal . . . .  Those we
would do without the defendant, because there's no constitutional
implication at that point."  Judge Mack testified that, in this
case, the petitioner was represented at the proceedings by the
public defender, Vincent Giedraitis, and that both the petitioner
and attorney Giedraitis were present in the courtroom at the time
the petitioner pleaded guilty and was sentenced.

The petitioner cross-examined the government's witnesses,
but did not put on any additional evidence at the hearing.  The
petitioner renewed his motion for reconsideration of the court's
July 27, 2005, ruling.  He also argued that, in addition to the
question of whether the ACCA enhancement was justified, a larger

question of ineffective assistance of counsel was also before the court. Specifically, the petitioner argued that even if he were an ACCA armed career criminal, he was still prejudiced by his attorney's failure at sentencing to alert the court to errors in the presentence report, which may have resulted in the imposition of a sentence in excess of the mandatory minimum.

**DISCUSSION**

A.   <u>MOTION PURSUANT TO 28 U.S.C. § 2255</u>

1.   <u>The ACCA Enhancement</u>

The petitioner first argues that he was improperly sentenced under the ACCA[5] because the court relied on an uncounseled prior state court conviction for robbery in the second degree in finding that he met the requirements for a sentencing enhancement under the ACCA.[6]  In particular, the petitioner maintains that in

_____

[5] The improper ACCA enhancement was the only argument made in the petitioner's original § 2255 motion and memorandum (document nos. 51 and 52).  The ACCA enhancement was one of five arguments for relief pursuant to § 2255 that the petitioner stated in his September 2, 2004, letter to the court, which the court ordered docketed as a renewed petition for relief pursuant to § 2255 on October 19, 2004.  Four of the five arguments in that letter pertain to the ACCA enhancement.  The fifth, discussed further herein, that even if he were an ACCA armed career criminal, he was still prejudiced by his attorney's failure at sentencing to alert the court to errors in the presentence report, was not argued in the petitioner's original § 2255 motion or memorandum or at the first evidentiary hearing on August 31, 2004.  However, having been raised in the petitioner's renewed petition and at the second evidentiary hearing, the court will address these grounds for relief as well.

[6] The petitioner does not challenge his 1994 federal firearms conviction.  The petitioner also does not dispute that, at the time of his original sentencing hearing in August 1994, he had previously been convicted on November 22, 1985, of possession

accordance with <u>Gideon v. Wainwright</u>, 372 U.S. 335 (1963), a felony conviction obtained without benefit of counsel is unconstitutional and may not be used as a predicate to enhance a sentence under the ACCA.  Further, the petition asserts that, although he did not raise this claim on direct appeal, the claim can be considered here because his trial attorney, Michael Graham, unreasonably failed to object to the ACCA enhancement and, in this regard, rendered constitutionally ineffective assistance.

In response, the government does not challenge the petitioner's statement of the law or dispute the petitioner's assertion that he was not represented by counsel in connection with the robbery conviction.  Instead, the government avers that, even if attorney Graham failed to render effective assistance, the petitioner is nevertheless not entitled to relief because "notwithstanding any possible infirmities with the [r]obbery 2 conviction, when the petitioner was originally sentenced, he had previously been convicted of [an additional felony of possession of a weapon at a correctional facility in violation of Conn. Gen. Stat. § 53a-174a, and hence] three predicate felony offenses, and therefore, the court's imposition of a sentence under the ACCA was both warranted and appropriate."

"If an enhanced federal sentence [is] based in part on a

---

with intent to distribute cocaine and assault in the first degree, or that these two prior convictions constituted valid predicate offenses under the ACCA.

prior conviction obtained in violation of the right to counsel,
the defendant may challenge the validity of his prior conviction
during his federal sentencing proceedings." Daniels v. United
States, 532 U.S. 374, 382 (2001). If he fails to do so, he may
still pursue "any channels of direct or collateral review still
available." Id. If the claim is not pressed on direct appeal,
collateral review in the form of a habeas petition is the only
recourse. See id. (citing United States v. Frady, 456 U.S. 152,
167-168 (1982) and stating that the procedural default rules
developed in the habeas corpus context apply). To prevail, the
petitioner must show both "(1) 'cause' excusing his double
procedural default, and (2) 'actual prejudice' resulting from the
errors of which he complains." United States v. Frady, 456 U.S.
152, 168 (1982).

Applying these principles, the court observes that the
petitioner did not object to the ACCA enhancement at sentencing,
and he did not press the instant claim on direct appeal.
Consequently, he must prove both cause for failing to raise the
claim and prejudice resulting from the claimed ineffective
assistance.

    a. Cause

To show cause, the petitioner must show that counsel's
performance was constitutionally deficient, that is, that it fell
below an objective standard of reasonableness under prevailing
professional norms. Bouyea v. United States, 263 F. Supp. 2d.
403, 411 (D. Conn. 2003) (citing Strickland v. Washington, 466

U.S. 668, 687-88 (1984)).  In this case, attorney Graham failed
to challenge the court's use of an uncounseled robbery 2
conviction in applying the ACCA enhancement, even though the
petitioner himself told attorney Graham that he was not
represented by counsel in that matter.  Attorney Graham's failure
to present any challenge to that enhancement prior to sentencing,
notwithstanding the obvious infirmity of that conviction under
Gideon v. Wainwright, 372 U.S. 335 (1963), and Burgett v. Texas,
389 U.S. 109 (1967),[7] compels the conclusion that counsel's
performance fell below an objective standard of reasonableness
under prevailing professional norms.

   b.  Prejudice

   To show prejudice, the petitioner must demonstrate that,
"but for counsel's unprofessional errors, there is a reasonable
probability that the result of the proceeding would have been
different." Bouyea v. United States, 263 F. Supp. 2d. 403, 411
(D. Conn. 2003) (citing Strickland v. Washington, 466 U.S. 668,
688 (1984)).  The court concludes that the petitioner has not
demonstrated a reasonable probability that the petitioner would
not have received the ACCA enhancement at sentencing had attorney
Graham identified the robbery conviction as having been obtained
in violation of Gideon v. Wainwright, 372 U.S. 335 (1963).  The
government argues that any prejudice flowing from such an error

---

[7] See Burgett v. Texas, 389 U.S. 109 (1967)(a conviction
obtained in violation of Gideon may not "be used against a person
either to support guilt or enhance punishment for another
offense").

is rendered moot by the petitioner's conviction for possessing a weapon at a correctional institution, in violation of Conn. Gen. Stat. § 53a-174a. The petitioner has presented evidence suggesting that he was convicted and sentenced of that weapons offense in <u>absentia</u>, and that he was not represented by counsel in that matter. In response, however, the government has credibly demonstrated that the petitioner was not convicted and sentenced of that weapons offense in <u>absentia</u>, and that the petitioner was represented by counsel at those proceedings. This weapons conviction, for possession of a weapon or dangerous instrument at a correctional institution in violation of Conn. Gen. Stat. § 53a-174a, may therefore serve as a valid substitute for the uncounseled robbery conviction as one of the three predicate felony offenses necessary for imposing the ACCA enhancement.

2. <u>Whether the Weapons Offense is a "Violent Felony"</u>

The petitioner next argues that a conviction for possession of a weapon or dangerous instrument in a correctional institution, in violation of Conn. Gen. Stat. § 53a-174a, "fails to qualify as [a] valid predicate under the ACCA." Specifically, the petitioner argues that the Connecticut statute "criminalizes possession of items which are evidently beyond the bounds of [18 U.S.C. §] 924(e)," because it criminalizes such possession "without regard to the possessor's intent or the manner, if at all, that the items were used, [and therefore] a violation of the statute cannot rationally [be] said to necessarily present a

serious risk of physical injury to another," as is required under the ACCA definition of a prior "violent felony."

The government responds that "every Circuit Court of Appeals that has considered an inmate's conviction for possessing a dangerous weapon while incarcerated, [has] concluded that such conduct, by its very nature, creates a serious potential risk of physical injury to other persons in the prison, and therefore constitutes a 'violent felony' under ACCA or a 'crime of violence' under U.S.S.G. § 4B1.1," which is similarly defined.

A sentencing enhancement under the ACCA requires, as a predicate, "three previous convictions . . . for a violent felony or a serious drug offense, or both." 18 U.S.C. § 924(e)(1). The ACCA defines a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year . . . that . . . is burglary, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). The petitioner and the government agree that the conviction for possession of a weapon in a correctional institution must fall under the ACCA, if at all, under the "otherwise" clause quoted above.

In determining whether a given offense "involves conduct that presents a serious potential risk of physical injury to another," and therefore constitutes a "violent felony" within the meaning of the ACCA, the court must adopt a "categorical approach" that "look[s] only to the fact of conviction and the

statutory definition of the prior offense." <u>Taylor v. United States</u>, 495 U.S. 575, 602 (1990); <u>United States v. Jackson</u>, 301 F.3d 59, 61 (2d Cir. 2002) ("looking only to the fact of conviction and the statutory definition of the prior offense rather than to the underlying facts of a particular offense").

The fact of the petitioner's conviction for the weapons offense is demonstrated by the judgment <u>mittimus</u>, clerk's worksheet or docket sheet, and the testimony of the witnesses entered into evidence at the two evidentiary hearings.[8]  The statutory definition of the weapons offense itself identifies the serious potential risk of physical injury to others that the prohibited conduct involves.[9]  The statute prohibits "possession

---

[8] In 1989, as now, the offense of possessing a weapon or dangerous instrument in a correctional institution was a "class B felony." Conn. Gen. Stat. § 53a-174a(b) (1989).  Such a class B felony in Connecticut is punishable by a term of imprisonment of "not less than one year nor more than twenty years." Conn. Gen. Stat. 53a-35a(5) (1989).  Thus, the requirement of the ACCA, that each predicate "violent felony" be "punishable by imprisonment for a term exceeding one year," is satisfied.  <u>See</u> <u>United States v. Paul</u>, 156 F.3d 403, 404 n.3 (2d Cir. 1998) ("the relevant question is whether the defendant was convicted of an offense <u>punishable</u> by more than one year, not whether the defendant actually received a sentence greater than one year.").

[9] Although the court of appeals for the second circuit has not yet addressed whether a violation of Conn. Gen. Stat. § 53a-174a constitutes a "violent felony" within the meaning of the ACCA, the designation of certain other offenses as "violent felonies" is instructive.  The escape of a prisoner from custody, an offense that does not necessarily involve the use of a weapon, constitutes a "violent felony" under the ACCA.  <u>United States v. Jackson</u>, 301 F.3d 59, 63 (2d Cir. 2002).  Likewise, attempt offenses, as well as completed offenses, may "merit status as [ACCA] predicate offense[s]."  <u>James v. United States</u>, 127 S. Ct. 1586, 1593, 1597-98 (2007) (holding that attempted burglary merits such status).

. . . [of] any firearm, weapon, dangerous instrument, explosive, or any other substance or thing <u>designed to kill, injure or disable</u>." Conn. Gen. Stat. § 53a-174a (emphasis added). A conviction for violating this statute involves, by its plain language, the possession of an item "designed to kill, injure or disable" by one inside a correctional institution, and therefore in the ordinary case, by its nature, involves conduct that presents a serious potential risk of physical injury to another.[10]

The court, therefore, concludes that a conviction for possession of a weapon or dangerous instrument in a correctional institution, in violation of Conn. Gen. Stat. § 53a-174a, is a "violent felony" under the ACCA.[11]

---

[10] Although one could imagine, as the petitioner suggests, circumstances in which the conduct involved in violating the statute "might not pose a realistic risk of confrontation or injury to anyone, . . . the ACCA does not require metaphysical certainty. Rather [its] residual provision speaks in terms of a 'potential risk.' These are inherently probabilistic concepts. Indeed, the combination of the two terms suggests that Congress intended to encompass possibilities even more contingent or remote than a simple 'risk,' much less a certainty. . . . [T]he proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another. . . . As long as an offense is of a type that, by its nature, presents a serious potential risk of injury to another, it satisfies the requirements of § 924(e)(2)(B)(ii)'s residual provision." <u>James v. United States</u>, 127 S. Ct. 1586, 1597 (2007).

[11] Although the court does not rely on non-binding case law from other circuits in reaching this conclusion, the conclusion is consistent with such decisions. <u>See, e.g.</u>, <u>United States v. Vahovick</u>, 160 F.3d 395, 397 (7th Cir. 1998) (holding that "possession of a weapon in a prison setting is conduct overtly implying its use, and is thus a crime of violence" under a sentencing guidelines provision very similar to the ACCA's

3.  Application of the ACCA

     The petitioner next argues that "the ACCA is facially
unconstitutional because it is not a sentence enhancement but is
effectively a substantive offense.  Alternatively, Blakely v.
Washington [542 U.S. 296 (2004)] prevents this court from making
factual findings that Connecticut's statute for criminal
possession of a weapon or dangerous instrument in a correctional
facility is a violent felony offense."  Specifically, the
petitioner argues that "the application of the 'otherwise' clause
of the ACCA requires courts to decide a mixed question of law and
fact with respect to whether the elements of the statute 'present
a serious potential risk of physical injury to another,' and that
in doing so the court must determine "whether there exists
aggravating facts surrounding [the] conviction that warrant a
finding that there is a serious potential risk of physical injury
to another."  This is so, the petitioner argues, because "there
are unquestionably potential uses of a 'dangerous instrument' . .
. which do not necessarily present a serious risk of physical
injury to another."

     The government responds that Aprendi v. New Jersey, 530 U.S.
466 (2000), specifically excludes the fact of prior conviction

---

"violent felony" provision); United State v. Romero, 122 F.3d
1334, 1341 (10th Cir. 1997) (holding that a conviction for
conveying in a correctional institution a weapon or "any other
. . . thing designed to kill, injure or disable any officer,
agent, employee or inmate thereof" is a "violent felony" under
the ACCA because "such an offense inherently presents a serious
potential risk of physical injury to another").

from those elements which must be submitted to a jury, and that
<u>Aprendi</u>'s rule has not been affected by <u>Blakely v. Washington</u>.
As such, the court's "duty to determine whether the petitioner
was previously convicted of three prior violent felony or serious
drug offenses" does not pose a constitutional problem.

"[A]ny fact that increases the penalty for a crime beyond
the prescribed statutory maximum must be submitted to a jury, and
proved beyond a reasonable doubt." <u>Aprendi v. New Jersey</u>, 530
U.S. 466, 490 (2000); <u>Blakely v. Washington</u>, 542 U.S. 296, 301
(2004).  Thus, a statute that authorizes a judge, "based upon the
judge's findings," to impose a sentence greater than the
statutory maximum for the crime submitted to the jury, and for
which the jury convicted, is unconstitutional.  <u>Aprendi v. New
Jersey</u>, 530 U.S. 466, 491-92 (2000); <u>Blakely v. Washington</u>, 542
U.S. 296, 303 (2004).  An exception exists where the judge must
determine "the fact of a prior conviction."  <u>Aprendi v. New
Jersey</u>, 530 U.S. 466, 490 (2000).  This exception is unaffected
by the <u>Blakely</u> decision.  <u>See, e.g.</u>, <u>United States v. Myton</u>, 224
F. Appx. 125, 132, 2007 WL 1492470 (2d Cir. 2007).

The court concludes that the determination of whether the
offense of possessing a weapon or dangerous instrument in a
correctional institution constitutes a "violent felony" under the
ACCA does not require the court to make impermissible findings of
fact.  As noted above, the court's determination is made using
the categorical approach, which limits the inquiry to 1) the fact
of a prior conviction, and 2) the statutory definition of the

prior offense.  These inquiries, discussed above, do not involve
factual findings into any "aggravating facts surrounding [the]
conviction."


4.  Estoppel

The petitioner next argues that the government should be
estopped from using the petitioner's conviction for possession of
a weapon or dangerous instrument in a correctional facility as a
substitute for the uncounseled robbery conviction, because it
"never sought to rely upon the Weapon's [sic] Possession charge"
at the time of the initial sentencing.

The government responds that "at the time of his sentencing
hearing, the petitioner had previously been convicted in July of
1989 of another felony offense, namely possession of a weapon or
dangerous instrument in a correctional institution . . . upon
which the Court properly could have relied as the third predicate
conviction in imposing sentence had the alleged infirmity in the
Robbery 2 conviction been brought to its attention in a timely
manner."  Specifically, the government notes that "the probation
office had already identified the . . . weapons possession
conviction as a possible alternative predicate conviction under
ACCA."  Thus, the government argues, the petitioner "cannot show
that, but for [his attorney's] actions or inactions, the outcome
of the hearing would have been any different."

Because the court concludes that the government would likely
have designated the weapons possession conviction as an

alternative ACCA predicate, had the robbery conviction been
challenged at the time of sentencing, the government is not
estopped from relying on it now. "[T]hree valid predicate
offenses existed at the time of sentencing and continue to
exist." Marshall v. United States, 18 F. Appx. 15, 17, 2001 WL
1085006 (1st Cir. 2001). The presentence report indicates that,
in addition to the three designated offenses that served as the
criteria for categorizing the petitioner as an "armed career
criminal," the petitioner had "several other convictions in his
criminal record that would qualify him for this provision."
Among the convictions used in calculating the petitioner's
criminal history category in the presentence report was the 1989
conviction for possession of a weapon or dangerous instrument in
a correctional institution. The government's reliance on the
weapons possession conviction now is neither contrary to nor
inconsistent with its reliance on the robbery conviction at the
initial sentencing hearing as one of the ACCA predicate offenses.
Cf. Bates v. Long Island Ry., 997 F.2d 1028, 1037 (2d Cir. 1993).
Therefore, the government is not prevented from arguing that the
weapons conviction should be permitted to substitute for the
uncounseled robbery conviction that the petitioner now
challenges.

5.  Prejudice Even if Petitioner was an Armed Career Criminal

The petitioner next argues that even if his sentence was
properly enhanced under the ACCA, "he was undoubtedly prejudiced
by his attorney's failure to alert the court to errors in the

27

presentence report." Specifically, the petitioner argues that had those matters been contested at the sentencing, "it is conceivable and quite likely that this Court would have simply imposed the mandatory minimum of fifteen years," rather than the 210 month (17 years, 6 months) sentence that was imposed.

The government does not respond to this argument to any significant degree. At the second evidentiary hearing, the government argued generally that "[t]here was no ineffective assistance of counsel here."

As noted above, to prevail on a motion such as this, the petitioner must show both "(1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." United States v. Frady, 456 U.S. 152, 168 (1982). To show cause, the petitioner must show that counsel's performance was constitutionally deficient, that is, that it fell below an objective standard of reasonableness under prevailing professional norms. Bouyea v. United States, 263 F. Supp. 2d. 403, 411 (D. Conn. 2003) (citing Strickland v. Washington, 466 U.S. 668, 687-88 (1984)). To show prejudice, the petitioner must demonstrate that, "but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different." Bouyea v. United States, 263 F. Supp. 2d. 403, 411 (D. Conn. 2003) (citing Strickland v. Washington, 466 U.S. 668, 688 (1984)).

For the reasons stated above, the court concludes that counsel's performance fell below an objective standard of

reasonableness under prevailing professional norms, by failing to challenge errors in the presentence report of which he had prior notice.

However, the court concludes that the petitioner has not met his burden in demonstrating prejudice. As an armed career criminal, the petitioner's offense level was set at 33 and reduced to 31 for acceptance of responsibility. His criminal history category was VI, giving a guidelines sentencing range of 188 to 235 months. The presentence report recommended, and he received, a sentence near the middle of that range, 210 months. The petitioner has offered no specific evidence that demonstrates a reasonable probability that the court would have imposed a sentence elsewhere in the guidelines range, or below that range, had the alleged errors in the presentence report been argued at the sentencing hearing, nor that the probation officer's sentencing recommendation, for a sentence in the middle of the range, would have been different had the alleged errors been objected to and corrected prior to sentencing. Rather, he relies only on the general assertion that the outcome could have been different.

This does not meet his burden to demonstrate that, "but for counsel's unprofessional errors, there is a <u>reasonable probability</u> that the result of the proceeding would have been different." <u>Bouyea v. United States</u>, 263 F. Supp. 2d. 403, 411 (D. Conn. 2003) (emphasis added) (citing <u>Strickland v. Washington</u>, 466 U.S. 668, 688 (1984)). Therefore, the

petitioner's motion on these grounds is DENIED.

B.    PETITIONER'S MOTION FOR RECONSIDERATION

As detailed above, following the court's entry of an order granting the petitioner's § 2255 motion on July 5, 2005, the government moved for reconsideration of that order, offering additional evidence.  On July 27, 2005, the court granted the government's motion for reconsideration and vacated the prior order.  On August 2, 2005, the petitioner filed a motion for reconsideration of the court's order of July 27, 2005, granting the government's motion for reconsideration.  On August 12, 2005, the court denied, without prejudice, the petitioner's motion for reconsideration because it determined that it lacked jurisdiction at that time.  On October 25, 2007, at the second evidentiary hearing, the petitioner orally renewed his motion for reconsideration.

The petitioner argues that "the Court misapprehended the law when it granted the Government's motion to reconsider [its] Order dated July 7 [sic], 2005."  Specifically, the petitioner argues that absent a showing that the government's new evidence was "previously unavailable" through the exercise of due diligence, the government's motion for reconsideration should have been denied.  The petitioner argues that "[i]t appears that this Court created a new rule of law permitting reconsideration . . . if the newly offered evidence is 'exceptional,'" and that this "essentially rewrites Rules 59 and 60 of the Federal Rules of Civil Procedure."

The government argues, in its response to the petitioner's opposition to the government's motion for reconsideration, that its motion and evidentiary submissions were made "in response to the Court's order [to show cause why the petitioner should not be released]." Further, the government argues, "[t]he title of the pleading, whether a response to an order to show cause or motion for reconsideration, should not control the outcome." The government also argues that "a valid basis for reconsideration is the need to correct clear error or prevent manifest injustice." As such, the government asserts that it would be clear error for the court's prior finding, that the petitioner's conviction and sentencing on the weapons charge were entered in absentia and without counsel, to stand in light of the government's proffered additional evidence.

As noted in the court's order of July 27, 2005, reconsideration of a previous ruling is appropriate where "there has been an intervening change in controlling law, there is new evidence, or a need is shown to correct a clear error of law or to prevent manifest injustice." United States v. Sanchez, 35 F.3d 673, 677 (2d Cir. 1994). Where reconsideration of a previous ruling would require a court to reopen an evidentiary hearing, the moving party is generally required to demonstrate that the evidence was unknown and could not through due diligence reasonably have been discovered at the time of the original hearing. United States v. Nezaj, 668 F. Supp. 330, 332 (S.D.N.Y. 1987). If the moving party is unable to show due diligence, a

court may nevertheless reopen that proceeding if the proffered evidence "indicate[s] that no constitutional violation occurred, [as] society's interest in admitting all relevant evidence militates strongly in favor of permitting reconsideration." United States v. Regilio, 669 F.2d 1169, 1177 (7th Cir. 1981). See also United States v. Bayless, 201 F.3d 116, 131 (2d Cir. 2000)(declining to adopt a bright line rule requiring the moving party to justify a failure to present all relevant evidence at the time of the original hearing). A judgment may be reopened only upon a showing of exceptional circumstances, Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986), and evidence which is merely cumulative or impeaching does not ordinarily constitute the basis for reopening a hearing. United States v. Oates, 445 F. Supp. 351, 353 (E.D.N.Y. 1978).

The court concludes that granting the government's motion for reconsideration on the basis of the newly furnished evidence was warranted. The court concluded, in its order of July 27, 2005, that the docket sheet was compelling evidence that the petitioner had not been convicted or sentenced in absentia or without counsel, and that although the government failed to justify its failure to present the evidence at the hearing, the court did not require a justification because the evidence clearly demonstrated that the earlier ruling was in error.

Further, the docket sheet was offered by the government in response to the court's order to show cause. Although the government's submission was in the form of a motion for

reconsideration, the motion noted in its first sentence that the court had "ordered the government to show cause . . . why the petitioner should not be immediately released." The proffered docket sheet responds directly to this order by demonstrating that the petitioner was properly sentenced under the ACCA provisions, in that he had the necessary three prior felony convictions at the time of his sentencing.

For the reasons stated above, the petitioner's renewed motion for reconsideration (document no. 112) is GRANTED, but upon further consideration of the issue, the relief requested is DENIED.

**CONCLUSION**

For the foregoing reasons, the petitioner's renewed motion for writ of habeas corpus pursuant to 28 U.S.C. § 2255 (document no. 103) is DENIED; and the petitioner's renewed motion for reconsideration (document no. 112) is GRANTED, but the relief requested is DENIED.

It is so ordered this 5th day of December, 2007, at Hartford, Connecticut.

_____/s/_____
Alfred V. Covello
United States District Judge
